# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ALTON BELCHER,

   Plaintiff,

vs.           Case No. 3:21-cv-375-MMH-JRK

ARAMARK UNIFORMS
& CAREER APPAREL, LLC,

   Defendant.

_____

# <u>O R D E R</u>

 **THIS CAUSE** is before the Court <u>sua</u> <u>sponte</u>.   Federal courts are courts of limited jurisdiction and therefore have an obligation to inquire into their subject matter jurisdiction.   See <u>Kirkland v. Midland Mortgage Co.</u>, 243 F.3d 1277, 1279-1280 (11th Cir. 2001); <u>see also</u> <u>Burns v. Windsor Ins. Co.</u>, 31 F.3d 1092, 1095 (11th Cir. 1994).   This obligation exists regardless of whether the parties have challenged the existence of subject matter jurisdiction.   <u>See</u> <u>Univ. of S. Ala. v. Am. Tobacco Co.</u>, 168 F.3d 405, 410 (11th Cir. 1999) ("[I]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction <u>sua sponte</u> whenever it may be lacking").   "In a given case, a federal district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question

jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)."  Baltin v. Alaron Trading, Corp., 128 F.3d 1466, 1469 (11th Cir. 1997).

On April 8, 2021, Defendant Aramark Sports and Entertainment Services, LLC (ASES) filed a notice of removal, seeking to remove this case from the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida. See generally Notice of Removal by Defendant Aramark Sports and Entertainment Services, LLC (Doc. 1; Notice).  In the Notice, ASES asserts that "the Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as this action involves: (1) citizens of different states, and (2) an amount in controversy in excess of seventy-five thousand dollars . . . ."  See id. ¶ 10. However, upon review of the Notice, Plaintiff's First Amended Complaint (Doc. 3; Complaint), and the documents attached to the Notice, the Court is unable to determine whether it has diversity jurisdiction over this action because ASES has not adequately pled the citizenship of the parties and has not provided the Court with sufficient information to enable it to determine whether the requisite amount in controversy is satisfied.[1]  See Taylor v. Appleton, 30 F.3d, 1365, 1367 (11th Cir. 1994).

---

[1]     The failure to adequately allege diversity jurisdiction in this case is certainly not unique.  See Wilkins v. Stapleton, No. 6:17-cv-1342-Orl-37GJK, 2017 WL 11219132, at *1 (M.D. Fla. Aug. 1, 2017) ("Diversity jurisdiction appears to create the biggest pleading challenge for the Bar.").  But, as aptly stated in Wilkins, the all-too-common "failure to demonstrate even a passing familiarity with the jurisdictional requirements of the federal

For a court to have diversity jurisdiction under 28 U.S.C. § 1332(a), "all plaintiffs must be diverse from all defendants." Univ. of S. Ala., 168 F.3d at 412. In the Notice, ASES alleges that "upon information and belief Plaintiff resides in Duval County, Florida," and cites to the Complaint for support. See Notice ¶ 8. The problems with this allegation are threefold. First, to establish diversity jurisdiction in a case involving a natural person, a party must include allegations of the person's citizenship, not where he or she resides. Taylor, 30 F.3d at 1367. A natural person's citizenship is determined by his or her "domicile," or "the place of his true, fixed, and permanent home and principal establishment . . . to which he has the intention of returning whenever he is absent therefrom." McCormick v. Aderholt, 293 F.3d 1254, 1257-58 (11th Cir. 2002) (quotation and citation omitted). "Citizenship, not residence, is the key fact that must be alleged in the complaint to establish citizenship for a natural person." Taylor, 30 F.3d at 1367; Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989) ("'Domicile' is not necessarily synonymous with

---

courts results in a waste of judicial resources that cannot continue." Id. Indeed,

> [t]he U.S. District Court for the Middle District of Florida is one of the busiest district courts in the country and its limited resources are precious. Time spent screening cases for jurisdictional defects, issuing orders directing repair of deficiencies, then rescreening the amended filings and responses to show cause orders is time that could and should be devoted to the substantive work of the Court.

Id. at *1 n.4. As such, before filing any future pleadings in federal court, counsel is strongly encouraged to review the applicable authority on federal subject matter jurisdiction. See id. at *1-2 (bulleting several "hints" on how to allege federal diversity jurisdiction properly).

'residence[.]'").    Second, the Complaint, which ASES cites as support, contains no allegations concerning the Plaintiff's residence, much less his domicile or citizenship.    See generally Complaint.    Third, ASES premises its allegation regarding Plaintiff Belcher's residence "upon information and belief."    Notice ¶ 8.    Allegations premised only on "information and belief" are insufficient to establish the citizenship of a party to invoke this Court's subject matter jurisdiction.    See, e.g., Payne v. Ivy, No. 6:18-cv-3-Orl-18KRS, 2018 WL 1155987, at *1 (M.D. Fla. Jan. 22, 2018) ("Allegations made 'upon information and belief' are not sufficient to support jurisdictional allegations, however."); Matos-Cruz v. JetBlue Airways Corp., No. 6:17-cv-380-Orl-37TBS, 2017 WL 3268956, at *2 (M.D. Fla. Aug. 1, 2017) ("Courts have held that allegations concerning a party's citizenship based only 'on information and belief' are insufficient."); Principle Solutions LLC v. Feed.ing BV, No. 13-C-223, 2013 WL 2458630, at *2 (E.D. Wis. June 5, 2013).    Therefore, ASES has not sufficiently alleged Plaintiff's citizenship for purposes of diversity jurisdiction.

Further, ASES fails to adequately allege its own citizenship.    The citizenship of an LLC for purposes of diversity jurisdiction is determined by the citizenship of its members.    See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004) (per curiam).    In this regard, ASES alleges that it is a

for-profit Delaware limited liability company, with its principal place of business in Pennsylvania.   The sole member of [ASES] is Aramark/HMS, LLC, a Delaware limited liability company with its principal place of business in Pennsylvania.   Aramark/HMS, LLC is 100% owned by Aramark Sports and Entertainment Group, LLC, a Delaware limited liability company with its principal place of business in Pennsylvania.   Aramark Sports and Entertainment Group, LLC is 100% owned by Aramark Services, Inc., a Delaware corporation with its principal place of business in Pennsylvania.

Notice ¶ 9.   While it appears that ASES may seek to use the term "100% owned" to mean the same thing as "member" when tracing through the layers in its family tree,[2] these terms are not necessarily synonymous under the law. See Traffas v. Biomet, Inc., No. 19-2115-DDC-JPO, 2020 WL 1467313, at *2 (D. Kan. Mar. 26, 2020) (collecting cases); see also AmGuard Ins. Co. v. Middleton, Civil Action No. 18-cv-0261, 2018 WL 3370568, at *1 (W.D. La. July 19, 2018) ("[I]t is membership that is critical for determining citizenship for diversity purposes, so allegations in this regard should be clear about what entities are actually members of others. Terms such as wholly-owned subsidiary leave room for doubt."); Ferrara v. Munro, No. 3:16-CV-950(CSH), 2016 WL 6892073, at *3 (D. Conn. Nov. 22, 2016) ("Plaintiffs have alleged that [individual] is the 'owner, operator, and alter ego' of [defendant LLC]. If that means that [individual] is

---

[2]      In the Notice, ASES identifies its own "sole member," but thereafter alleges only the identity of the respective "100% owner" of each remaining LLC in its family tree.   See Notice ¶ 9.

the <u>sole</u> <u>member</u> of that limited liability company, Plaintiffs must specify that fact.").[3]

In addition, where a defendant removes an action from state court to federal court, the defendant "bears the burden of proving that federal jurisdiction exists." See <u>Williams v. Best Buy Co., Inc.</u>, 269 F.3d 1316, 1319 (11th Cir. 2001). In <u>Dart Cherokee Basin Operating Co.</u>, the Supreme Court explained that a defendant's notice of removal must include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." See <u>Dart Cherokee Basin Operating Co., LLC, v. Owens</u>, 574 U.S. 81, 89 (2014). If the plaintiff contests the allegation, or the court questions it, a defendant

---

[3]     The Court acknowledges that the terms "owner" and "member" have sometimes been used synonymously with respect to limited liability companies. <u>See</u>, <u>e.g.</u>, <u>Johnson v. Columbia Props. Anchorage, LP</u>, 437 F.3d 894, 899 (9th Cir. 2006) ("We therefore join our sister circuits and hold that, like a partnership, an LLC is a citizen of every state of which its owners/members are citizens."). Nonetheless, these terms are not always interchangeable. Indeed, ASES identifies itself as a "Delaware limited liability company," <u>see</u> Notice ¶ 9, and under Delaware law "one can have an ownership interest in a limited liability company without being a member." <u>See</u> <u>Taylor v. Nationstar Mortg., LLC</u>, No. 1:15-CV-4403-AT-LTW, 2016 WL 6662734, at *2 (N.D. Ga. July 29, 2016) <u>rejected, in part, but adopted in pertinent part by</u> 2016 WL 7131593, at *1 (N.D. Ga. Aug. 22, 2016); Del. Code Ann. tit. 6, § 18-704 (explaining the circumstances in which the assignee of a limited liability company interest can become a member); Del. Code Ann. tit. 6, § 18-702(b)(1) ("(b) Unless otherwise provided in a limited liability company agreement: (1) An assignment of a limited liability company interest does not entitle the assignee to become or to exercise any rights or powers of a member."); Del. Code. Ann. tit. 6, § 18-101(8) ("'Limited liability company interest' means a member's share of the profits and losses of a limited liability company and a member's right to receive distributions of the limited liability company's assets."); <u>see also</u> <u>Busch v. Lee Enters., Inc.</u>, Civil No. 09-780-GPM, 2009 WL 5126799, at *1 (S.D. Ill. Dec. 21, 2009) (finding citizenship allegations pertaining to a Delaware limited liability company were insufficient where plaintiffs alleged that defendant LLC was "entirely owned" by a corporation, and the citizenship of that corporation, but failed to allege whether the corporation was the sole member of the LLC).

must then present evidence establishing that the amount in controversy requirement is met.  Id. (citing 28 U.S.C. § 1446(c)(2)(B)); see also Dudley v. Eli Lilly & Co., 778 F.3d 909, 912 (11th Cir. 2014).  Notably, "[a] conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden."  See Williams, 269 F.3d at 1320. Indeed, the Court may not speculate or guess as to the amount in controversy. See Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 752 (11th Cir. 2010). Rather, a removing defendant should make "specific factual allegations establishing jurisdiction" and be prepared to "support them (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations."  Id. at 754.  In those circumstances, a court is able to determine the amount in controversy without relying on impermissible "conjecture, speculation, or star gazing."  Id. at 754.[4]

---

[4]      The Court notes that Dart, Dudley, and Pretka, all involved cases removed to federal court under the Class Action Fairness Act of 2005 (CAFA).  Because remand orders are not ordinarily reviewable on appeal, except in class action cases, see 28 U.S.C. § 1447(d), § 1453(c), appellate decisions on removal usually involve cases removed under CAFA.  See, e.g., Pretka, 608 F.3d at 752.  Nonetheless, with limited exception, "CAFA's removal provision expressly adopts the procedures of the general removal statute, 28 U.S.C. § 1446."  Pretka, 608 F.3d at 756-57 & n.11 (citations omitted).  Thus, although the cases cited above involved removal under CAFA, they interpret and apply the general removal procedures, and thus, the Court finds the analysis of those cases applicable here.  See Bender v. Mazda Motor Corp., 657 F.3d 1200, 1204 n.2 (11th Cir. 2011) (addressing an appeal involving a non-CAFA removal and citing to Pretka as authority regarding removal procedures).

Here, ASES alleges that it is "aware that Plaintiff previously made a settlement demand to Aramark Uniform that was well in excess of the $75,000.00 statutory minimum."   Notice ¶ 5.   While the Court may consider a pre-suit demand in determining whether the amount in controversy requirement has been satisfied, ASES does not provide the Court with a copy of the demand, if it was made in writing, or otherwise provide any details of the demand.   Moreover, ASES fails to explain how a settlement demand made to "Aramark Uniform" is relevant to the determination of the amount in controversy in the action Plaintiff Alton Belcher brings against ASES.[5]   The probative value of a pre-suit demand depends on its content.   For example, "[w]hen referencing a demand letter to ascertain the amount in controversy, courts analyze 'whether demand letters merely reflect puffing and posturing or whether they provide specific information to support the plaintiff's claim for damages.'"   See Boyd v. State Farm Mut. Auto. Ins. Co., No. 6:15-cv-1965-Orl-22TBJ, 2015 WL 12838805, at *2 (M.D. Fla. Dec. 16, 2015) (quoting Moser v. Cincinnati Ins. Co., No. 8:14-cv-3121-CEH-TWG, 2015 WL 628961, at *2 (M.D. Fla. Feb. 12, 2015)).   If a pre-suit demand letter provides "a reasonable assessment of the value of the claim," then it is "more indicative of the true amount in controversy," especially where the letter "contains supporting

---

[5]      As ASES represents in the Notice, "Aramark Uniform and Career Apparel, LLC ('Aramark Uniform') has been dropped from this case," such that ASES "is the sole defendant" remaining in this action.   See Notice ¶ 1, n.1.

information, such as medical bills or a specific medical diagnosis." <u>Id.</u> (internal quotation omitted); <u>see</u> <u>also</u> <u>Hernandez v. Burlington Coat Factory of Fla., LLC</u>, No. 2:15-cv-403-FtM-29CM, 2015 WL 5008863, at *2 (M.D. Fla. Aug. 20, 2015). In contrast, a demand for a lump sum amount "without the slightest suggestion how in the world the plaintiff[] could support such a figure," is considered nothing more than mere posturing. <u>See</u> <u>Jackson v. Select Portfolio Servicing, Inc.</u>, 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009). Here, Defendant's cursory mention of a demand directed to a co-Defendant no longer party to this action with no information whatsoever as to its basis or content is probative of nothing. Similarly, ASES's general statement—lacking supporting information—that the amount in controversy exceeds $75,000, <u>see</u> Notice ¶ 10, is no different than the type of conclusory allegations, devoid of any underlying factual support, that the Eleventh Circuit has held are "insufficient to meet the defendant's burden" of establishing the amount in controversy. <u>See</u> <u>Williams</u>, 269 F.3d at 1320.

Therefore, ASES has not carried its burden of alleging sufficient information to enable the Court to determine whether it has diversity jurisdiction over this action.

Accordingly, it is

**ORDERED:**

Defendant Aramark Sports and Entertainment Services, LLC shall have up to and including **April 28, 2021**, to provide the Court with sufficient information so that it can determine whether it has diversity jurisdiction over this action.

**DONE AND ORDERED** in Jacksonville, Florida on April 19, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

lc27
Copies to:
Counsel of Record