## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ALTON BELCHER,

        Plaintiff,

vs.

                                      Case No. 3:21-cv-375-MMH-LLL

ARAMARK SPORTS AND
ENTERTAINMENT SERVICES,
LLC,

        Defendant.

_____

ARAMARK SPORTS AND
ENTERTAINMENT SERVICES,
LLC,

        Defendant/Third-Party Plaintiff,

v.

FASTTRACK STAFFING, INC.,

        Third-Party Defendant.

_____

## O R D E R

**THIS CAUSE** is before the Court on the Motion for Summary Judgment of Third-Party Plaintiff, Aramark Sports and Entertainment Services, LLC, Against Third-Party Defendant FastTrack Staffing, Inc. and Incorporated Memorandum of Law (Doc. 29; Motion), filed on January 12, 2022. Third-Party

Defendant, FastTrack Staffing, Inc. (FastTrack), filed a response in opposition to the Motion on January 31, 2022.  See Third-Party Defendant, FastTrack Staffing, Inc.'s Response to Third-Party Plaintiff, Aramark Sports and Entertainment Services, LLC's Motion for Summary Judgment (Doc. 31; Response).  On February 14, 2022, Aramark Sports and Entertainment Services, LLC (Aramark Sports) filed a reply.  See Reply of Aramark Sports and Entertainment Services, LLC, to the Response of FastTrack Staffing, Inc. to Aramark's Motion for Summary Judgment (Doc. 32; Reply).  Accordingly, this matter is ripe for the Court's consideration.

## I.    Background[1]

This contractual indemnity dispute arises out of a negligence action brought by Plaintiff Alton Belcher against Defendant and Third-Party Plaintiff Aramark Sports (the "Underlying Action").[2]  See Plaintiff's First Amended Complaint (Doc. 3; Operative Complaint).  Mr. Belcher initiated the Underlying

---

[1]    For the purposes of resolving Aramark Sports' Motion, the Court views all disputed facts and reasonable inferences in the light most favorable to FastTrack.  However, the Court notes that these facts may differ from those ultimately proved at trial.  See Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002).

[2]    Mr. Belcher first named Aramark Uniforms & Career Apparel, LLC (Aramark Uniforms) as the defendant in the Underlying Action.  However, upon being served, counsel for Aramark Uniforms advised counsel for Mr. Belcher that Aramark Sports was the proper defendant.  See Notice of Removal (Doc. 1), Exhibit B: Stipulation for Acceptance of Service by Aramark Sports and Entertainment Services, LLC.  As a result, Mr. Belcher filed the Operative Complaint on January 21, 2021, removing any allegations against Aramark Uniforms.  Id.  Aramark Sports agreed to accept service of process of the Operative Complaint as the sole defendant in Mr. Belcher's suit.  Id.  The Court will direct the Clerk of the Court to correct the caption to properly reflect Aramark Sports and Entertainment Services, LLC as the sole named Defendant.

2

Action in the Fourth Judicial Circuit, in and for Duval County, Florida on May 8, 2020.   See Notice of Removal by Defendant Aramark Sports and Entertainment Services, LLC (Doc. 1; Notice of Removal), Ex. C.   The claims raised in the Underlying Action arise out of an incident that occurred while Mr. Belcher was employed by FastTrack as a temporary worker to clean up after a Jacksonville Jaguars football game.[3]  See Operative Complaint ¶ 5; see Third Party Complaint (Doc. 10; Third-Party Complaint).   According to Mr. Belcher, he was working in the vicinity of an Aramark Sports employee who was driving a Toro Workman Cart and who offered Mr. Belcher a ride.  Operative Complaint ¶¶ 3-5.  Mr. Belcher accepted the ride and climbed into the cart.  Id. ¶ 5.  Mr. Belcher alleges that the "[Aramark Sports] employee negligently operated the Toro Workman Cart in a manner which ultimately threw [him] off the back of the Cart." Id. ¶ 6.  As a result, he suffered injuries to "his head, brain, spine, body and extremities." Id. ¶ 10.

In a deposition taken in this action, Mr. Belcher testified that before he was thrown from the cart, the Aramark Sports employee who was driving the cart stopped at a store to purchase a tall can of beer.  See Videotaped Deposition of Alton Belcher, III (Doc. 31-2; Belcher Depo) at 42.  Mr. Belcher observed the

---

[3]     Mr. Belcher alleges that the incident occurred on or around December 13, 2018, see Operative Complaint¶ 3, and Aramark Sports alleges that the incident occurred on April 30, 2017.  See Third-Party Complaint (Doc. 10). The precise date of the incident is not relevant to the issues presently before the Court.

3

employee take "a couple swigs" of the beer. <u>Id.</u> at 43. As they drove back to the Jacksonville Jaguars' stadium, the Aramark Sports employee and other individuals riding in the cart began smoking marijuana. <u>Id.</u> at 44. Mr. Belcher testified that as the evening went on, the employee began to have difficulty operating the cart. <u>Id.</u> at 47-48. When there were speed bumps in the road or parking lot, the employee sped over them and caused the cart to jump. <u>Id.</u> at 57. Mr. Belcher maintains that it was the employee's negligent driving that caused him to eventually fall out of the cart and injure himself. <u>Id.</u> at 48. He also alleges that Aramark Sports is "vicariously liable for the negligence of its employee driver of the Toro Workman Cart." Operative Complaint ¶ 7.

Aramark Sports removed the Underlying Action to this Court on April 8, 2021. <u>See generally</u> Notice of Removal. And, on April 29, 2021, Aramark Sports filed an unopposed motion to file a Third-Party Complaint against FastTrack and attached its proposed pleading. <u>See</u> Unopposed Motion of Defendant, Aramark Sports and Entertainment Services, LLC, to File a Third Party Complaint Against FastTrack Staffing, Inc., with Incorporated Memorandum of Law and Notice of Conferring with Opposing Counsel as Required by Local Rule 3.01(g) (Doc. 8). The Court granted the motion and directed the Clerk to file the attached complaint on the docket as of April 30, 2021. <u>See generally</u> Third-Party Complaint.

In the Third-Party Complaint, Aramark Sports alleges that FastTrack has a duty to defend and indemnify it against the claims raised in the Underlying Action pursuant to the Supplier Non-Exclusive Master Service Agreement (Doc. 10-1; Service Agreement) which it attaches as Exhibit A. See id. ¶¶ 4-5. FastTrack entered into the Service Agreement with Staff Management Solutions, LLC (SMS), Aramark Food Support Services Group, Inc.'s (Aramark Food) procurement manager for the procurement of temporary labor services. See Service Agreement at 2.[4] By entering into the Service Agreement with SMS, FastTrack sought to provide temporary workers to Aramark Food. Id. Pursuant to the Service Agreement, FastTrack also furnished temporary workers to Aramark Sports in connection with its operations at EverBank Field and the Jacksonville Baseball Grounds. See Third-Party Complaint ¶ 3; see also Third Party Defendant, FastTrack Staffing, Inc.'s, Answer and Affirmative Defenses (Doc. 19; Answer) ¶ 3.

Citing to paragraph 11 of the Service Agreement, Aramark Sports asserts that it "is and was a third party beneficiary of the Service Agreement." Id. ¶ 4. Paragraph 11 of the Service Agreement between FastTrack and SMS contains an indemnity provision that states, in relevant part:

---

[4] For ease of reference, the Court's citations to page numbers in documents in the record refer to the CM-ECF-stamped page numbers located at the top of each page, rather than a document's internal page numbers, if any.

11. Indemnification

. . .

(b) To the fullest extent permitted by law, [FastTrack] shall defend, indemnify and hold harmless, Client, Client's clients, Staff Management, all of their respective parents, affiliates and subsidiaries, and all of such entities' respective directors, officers, employees and agents, from and against any and all claims demands, suits, investigations, administrative proceedings, losses, settlements, damages, liabilities, fines, penalties, costs, attorneys' fees and expenses to the extent related to or arising out of . . . any injury or death to the Temporary Workers while such employees are providing services for Client, except with respect to Client's gross negligence or willful misconduct.

Service Agreement at 14.  "Client" is defined in the Service Agreement as Aramark Food, and also as "[SMS]'s customer purchasing Temporary Staffing Services supplied by [FastTrack]."  Id. at 2.  According to Amy Golembo, a Litigation and Employment Law Paralegal in the Legal Department at Aramark Headquarters, Aramark Sports is an affiliate of Aramark Food as well as a "Client" within the meaning of the Service Agreement.  See Affidavit of Amy Golembo in Support of the Motion for Summary Judgment of Aramark Sports and Entertainment Services, LLC (Doc. 29-5; Golembo Affidavit) at 2-4.

In the Third-Party Complaint, Aramark Sports brings claims against FastTrack for breach of the contractual duty to indemnify (Count I) and breach of the contractual duty to defend (Count II) as well as a request for declaratory relief as to both of these claims (Count III).  See generally Third-Party Complaint.  Aramark Sports served FastTrack with the Third-Party Complaint

6

on May 26, 2021, and FastTrack filed its Answer on June 10, 2021. <u>See</u>
<u>generally</u> Answer. Aramark Sports filed the instant Motion on January 12,
2022, seeking summary judgment on all counts.

## II.   Summary of the Arguments

In the Motion, Aramark Sports seeks entry of summary judgment in its
favor arguing that it is a third-party beneficiary of the Service Agreement and
pursuant to paragraph 11 of the Service Agreement, FastTrack is obligated to
indemnify, defend and hold Aramark Sports harmless with respect to the claims
brought by Mr. Belcher. <u>See generally</u> Motion. Aramark Sports makes several
arguments in support of the assertion that it is an intended third-party
beneficiary of the Service Agreement. <u>See</u> Motion at 3-5. First, Aramark Sports
contends it is a "Client" of SMS. <u>Id.</u> at 3. Specifically, Aramark Sports argues
that it purchased Mr. Belcher's temporary labor services from FastTrack and
"Client" is defined in the Service Agreement as SMS's customer purchasing
temporary staffing services from FastTrack. <u>Id.</u> Further, Ms. Golembo declared
that Aramark Sports was SMS's Client and the pricing schedule attached to the
Service Agreement states the line of business is "Sports & Entertainment" in
reference to Aramark Sports. <u>Id.</u>; <u>see also</u> Golembo Affidavit. Second, Aramark
Sports contends it is the "Client's client," under the indemnification provision,
because it can be characterized as a client of Aramark Food. <u>Id.</u> at 3-4. Third,
according to Ms. Golembo, Aramark Sports is an affiliate of Aramark Food, and

the Service Agreement provides that FastTrack has a duty to defend and indemnify Aramark Food's affiliates. <u>Id.</u> at 4. Finally, Aramark Sports argues that FastTrack's admission that it supplied Mr. Belcher to Aramark Sports as a temporary worker pursuant to the Service Agreement is an admission that Aramark Sports is an intended third-party beneficiary of the agreement. <u>Id.</u> at 4-5.

Aramark Sports next maintains that the indemnity provision in the Service Agreement is valid and enforceable. <u>Id.</u> at 11. Although it recognizes that a provision indemnifying a party against its own negligence must be clear and unequivocal, Aramark Sports contends that the provision in the Service Agreement meets this standard. <u>Id.</u> at 11-12. Additionally, Aramark Sports argues that there are no allegations of gross negligence or willful misconduct on the part of Aramark Sports in the Underlying Action such that FastTrack would be relieved of the obligations in the indemnity provision. <u>Id.</u> at 13. According to Aramark Sports, the question of whether the indemnity provision covers the claims raised in the Underlying Action is solely one of contract interpretation appropriate for resolution by the Court. <u>Id.</u> at 14. Moreover, Aramark Sports argues that the contractual duty to defend is distinct from the duty to indemnify, and the factual allegations in the Operative Complaint at a minimum trigger FastTrack's duty to defend. <u>Id.</u> at 15.

In the Response, FastTrack contends that Aramark Sports has not met its burden of submitting evidence that FastTrack intended the indemnity provision of the Service Agreement to benefit Aramark Sports.  Response at 8-10. Further, FastTrack maintains that the Service Agreement itself does not express any such intent. Id. at 11.  Regardless, even if Aramark Sports had met its burden, FastTrack argues that there are issues of fact that preclude summary judgment. Id.  FastTrack does not take issue with Aramark Sports' interpretation of the indemnification provision, but rather, contends Mr. Belcher's testimony that an Aramark Sports employee was drinking, smoking marijuana, and driving erratically when he was thrown off the cart, creates a jury question regarding whether Aramark Sports, through its employee, acted with gross negligence under the relevant exclusion in the indemnity provision. Id. at 11-13.  Finally, FastTrack contends that entry of judgment prior to a final determination of liability in the Underlying Action is premature.  Id. at 13.

In the Reply, Aramark Sports reiterates the arguments in the Motion and insists that there is no evidence of gross negligence or willful misconduct such that the actions of its employee can fall under the exclusion.  See Reply at 2. Moreover, Aramark Sports argues that the duty to defend is separate from the duty to indemnify and is triggered by the allegations of the Operative Complaint, in which Mr. Belcher only alleges negligence.  Id. at 5-6.

## III.   Standard of Review

Under Rule 56, Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a).  The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Rule 56(c)(1)(A).[5]  An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant.  See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)).  "[A] mere scintilla of evidence in support of the non-moving party's position is

---

[5]     Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 Advisory Committee's Note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id.  "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Campbell v. Shinseki, 546 Fed. Appx. 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable and applies here.

In citing to Campbell, the Court notes that it does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

insufficient to defeat a motion for summary judgment." <u>Kesinger ex rel. Estate of Kesinger v. Herrington</u>, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. <u>See</u> <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248; <u>see also</u> <u>McCormick v. City of Ft. Lauderdale</u>, 333 F.3d 1234, 1243 (11th Cir. 2003) ("The mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is material to an issue affecting the outcome of the case."). In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment."

11

Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros.

Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## IV.   Discussion

Preliminarily, the Court notes that paragraph 29 of the Service

Agreement provides:

29. Governing Law and Choice of Forum

This Agreement is made and delivered in the State of Illinois, and shall be governed by, construed and enforced in accordance with Illinois law.  Any lawsuit related to this Agreement or the activities contemplated by this Agreement may only be brought in, and the Parties consent to the jurisdiction of, the United States District Court for the Northern District of Illinois (if Federal jurisdiction applies) or in the Circuit Court of Cook County, Illinois.

Service Agreement at 26.  Despite this provision expressly stating that the

Service Agreement "shall be governed by, construed and enforced in accordance

with Illinois law," in the Motion, Aramark Sports relies first on Florida law

while also arguing that, if Illinois law applies, it "is in agreement with Florida

law on the construction of indemnity provisions . . . ." See Motion at 11-13.  For

its part, FastTrack applies only Florida law in its Response.  See generally

Response.

"In determining which law applies, a federal district court sitting in

diversity must apply the choice of law rules of the forum state." Trumpet Vine

Invs., N.V. v. Union Cap. Partners I, Inc., 92 F.3d 1110, 1115 (11th Cir. 1996).

And "under Florida law, courts will enforce 'choice-of-law provisions unless the

law of the chosen forum contravenes strong public policy.'" Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1341 (11th Cir. 2005) (quoting Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co., 761 So.2d 306, 311 (Fla. 2000)). Indeed, a choice of law provision is "presumed valid until it is proved invalid." Mazzoni, 761 So. 2d at 311 (internal citation and quotation omitted). Neither Aramark Sports nor FastTrack suggest any basis for the Court to conclude that the choice of law required by the provision in the Service Agreement would violate Florida public policy, and the Court independently discerns none. As such, the choice of law provision controls, and the Court must apply Illinois law in construing and enforcing the Service Agreement.

With regard to whether Aramark Sports is a third-party beneficiary of the Service Agreement, Illinois law recognizes two types of third-party beneficiaries – intended and incidental. Bank of Am. Nat. Ass'n v. Bassman FBT, L.L.C., 2012 IL App (2d) 110729, ¶ 27, 981 N.E.2d 1, 11, as modified on denial of reh'g (Dec. 7, 2012). Notably, "[o]nly an intended third-party beneficiary may enforce rights under a contract." Id. Under Illinois law,

> [w]hether someone is a[n intended] third-party beneficiary depends on the intent of the contracting parties, as evidenced by the contract language. It must appear from the language of the contract that the contract was made for the direct, not merely incidental, benefit of the third person. Such an intention must be shown by an express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs. If a contract makes no mention of the plaintiff or the class to which he belongs, he is not a third-party beneficiary of the contract. The

plaintiff bears the burden of showing that the parties to the contract intended to confer a direct benefit on him.

Martis v. Grinnell Mut. Reinsurance Co., 388 Ill. App. 3d 1017, 1020, 905 N.E.2d 920, 924 (2009) (internals citations and quotations omitted); see also Evans v. Lima Lima Flight Team, Inc., 373 Ill. App. 3d 407, 414, 869 N.E.2d 195, 202 (2007) ("It is sufficient that [a beneficiary to a contract] be identified as a member of the class intended to be benefitted . . .").

The Evans decision from an Illinois state appellate court is instructive on this issue. In Evans, a plaintiff signed an exculpatory provision stating, in relevant part, that he agreed to "release and forever discharge the Signatory Organizations listed below each and every one of them and F.A.S.T., its members, employees, suppliers, agents or representatives." Id. at 413. Later, the plaintiff, who was the executor of the estate of an individual who died in an airplane crash, brought a wrongful death and survival action against various defendants including individuals who were members of F.A.S.T. Id. at 409, 413. Relying on the exculpatory provision, the individual defendants moved for summary judgment on the claims against them. Id. at 410. The trial court considered the language of the agreement in addition to an affidavit in which one of the defendants stated that all of the individual defendants were "members" of F.A.S.T. at the time of the accident. Id. at 412. On that basis, the court granted summary judgment in favor of the individual defendants, "finding

that the exculpatory agreement was specific and definite enough to release the individual defendants from liability for Evans' death." Id. at 411.  The appellate court affirmed, concluding that

> [t]he uncontradicted evidence establishe[d] that the individual defendants were members of F.A.S.T. when the exculpatory agreement became operable, the date of the accident. Consequently, the individual defendants are clearly included within the class of beneficiaries covered by the agreement and are, thus, entitled to its protection.

Id. at 414.

Here, the Service Agreement provides, in relevant part, that "[t]o the fullest extent permitted by law, [FastTrack] shall defend, indemnify and hold harmless, [Aramark Food], [Aramark Food's] clients, Staff Management, all of their respective parents, affiliates and subsidiaries . . . ." Service Agreement at 14.  Aramark Sports has presented evidence that it is, and at the relevant time was, an affiliate of Aramark Food.  See Golembo Affidavit.[6]  Notably, FastTrack does not dispute that Aramark Sports was an affiliate of Aramark Food.  Nor has it presented any evidence suggesting that the parties otherwise intended to exclude Aramark Sports from the definition of affiliate.  Indeed, FastTrack acknowledges, as undisputed facts, that

> 15.    The indemnification clause of the Service Agreement refers to indemnification of Aramark Food, its clients, Staff Management

---

[6]     In paragraph 1 of the Service Agreement the parties identify Aramark Food as the "Client."  Service Agreement at 1.

and all of their respective parents, affiliates and subsidiaries. (Dkt. # 29-3).

16.   Ms. Golembo states that Aramark Sports is an "affiliate" of Aramark Food. (Dkt. # 29-5, ¶ 5).

Response at 5.   Further the undisputed record establishes that FastTrack supplied Belcher as a temporary worker to Aramark Sports under the Service Agreement.   Answer ¶ 3.   Pursuant to the Service Agreement, the term "Client" is defined as including "[SMS]'s customer purchasing Temporary Staffing Services supplied by [FastTrack]."   Service Agreement at 1.   As confirmed by FastTrack's Answer and the Golembo Affidavit, Aramark Sports was a client purchasing temporary workers from FastTrack under the Service Agreement. Golembo Affidavit ¶¶ 6-7.   Once again, FastTrack does not dispute these facts. Thus, for either of these reasons, Aramark Sports appears to fall within a class identified as an intended beneficiary of the indemnity provision in the Service Agreement.

Rather than dispute these facts, in opposing entry of summary judgment with regard to the question of whether Aramark Sports is a third-party beneficiary of the indemnity provision of the Service Agreement, FastTrack cites Florida law to argue that Aramark Sports should be required to submit additional evidence in support of the parties' intent.   However, as previously noted, Florida law is inapplicable, <u>see</u> Response at 8-11, and applying Illinois law, FastTrack's argument is without merit.   Under Illinois law "[w]hether

someone is a[n intended] third-party beneficiary depends on the intent of the contracting parties, <u>as evidenced by the contract language</u>." <u>Martis</u>, 388 Ill. App. 3d at 1020 (emphasis added).  Here, as in <u>Evans</u>, Aramark Sports pointed to the language of the Service Agreement and has offered uncontradicted evidence that it falls within a class of beneficiaries identified in the Service Agreement as covered by the relevant contractual provision.  As such, the Court finds that under Illinois law, Aramark Sports is an intended third-party beneficiary of the indemnity provision in the Service Agreement.

Having determined that Aramark Sports is an intended third-party beneficiary of the indemnity provision of the Service Agreement, the Court turns next to Aramark Sports' arguments regarding whether the Underlying Action triggers FastTrack's contractual duties to defend and indemnify it.  In the Motion, Aramark Sports contends that

> [m]ost of the law on when a duty to defend is triggered arises in the context of cases involving a contractual duty to defend in an insurance contract.  While FastTrack is not an insurer, its contractual duty to defend in the instant case is akin to the duty of an insurer to defend its insured as FastTrack has contractually agreed to defend and indemnify Aramark Sports pursuant to the express terms of the Service Agreement.

Motion at 15; <u>see also</u> Reply at 5.  With that understanding, Aramark Sports argues that whether the duty to defend has been triggered is determined by looking to the allegations in the complaint as is the case in the context of an insurance policy.  <u>See</u> Motion at 15; <u>see</u> Reply at 5-6.  However, Aramark Sports

17

cites no authority in support of its contention that whether there is a duty to defend under an indemnity agreement set forth in a contract other than an insurance policy is governed by the same standard as applies to an insurance policy. And, it appears Illinois law is not so settled on the question of whether caselaw interpreting the duty to defend in the insurance context applies to indemnity provisions included in contracts where the main purpose of the contract is not the purchase of insurance coverage. See Ervin v. Sears, Roebuck & Co., 127 Ill. App. 3d 982, 984, 469 N.E.2d 243, 245 (1984).

Some appellate courts in Illinois have applied the law governing insurance contracts to indemnification provisions as Aramark Sports seeks to do here. See McNiff v. Millard Maint. Serv. Co., 303 Ill. App. 3d 1074, 1081, 715 N.E.2d 247, 252 (1999) (citation omitted) ("It is well established that whether such a duty is triggered depends solely on the allegations in plaintiff's pleadings."); see also 933 Van Buren Condo. Ass'n v. W. Van Buren, LLC, 2016 IL App (1st) 143490, ¶ 57, 61 N.E.3d 929, 945 (2016) (quoting Jandrisits v. Village of River Grove, 283 Ill. App. 3d 152, 158, 218 Ill. Dec. 640, 669 N.E.2d 1166 (1996)) ("[T]he existence of a duty to defend a complaint arising from an indemnity agreement is determined solely from the allegations of the complaint and the agreement."). However, in Ervin v. Sears, Roebuck & Co., an Illinois appellate court concluded that

> while the law expressly prohibits those in the business of insurance from refusing to defend based on what they have discovered from "looking behind" the subject complaint, no such restriction is imposed on a business which, as part of its agreement with a purchaser of its products, agrees to defend and/or indemnify that customer in suits involving those products. . . . Given the unique position of an insurance company as a professional "seller" of protection against loss, and the fundamentally different role of the manufacturer of goods, we hold that it is not unreasonable to compel [insurer] to defend the suit based on the allegations of Ervin's complaint, while allowing [seller] a greater degree of freedom to investigate those allegations for the purpose of determining what its contractual obligations to [buyer] in connection with the Ervin suit in fact are.

127 Ill. App. 3d 982, 984, 469 N.E.2d 243, 245 (1984).  Courts applying Illinois law appear to struggle with the proper standard for determining the existence of a duty to defend outside the context of an insurance contract.  See Applied Indus. Materials Corp. v. Mallinckrodt, Inc., 102 F. Supp. 2d 934, 941-44 (N.D. Ill. 2000) (accepting Ervin's guidance); see also Medline Indus., Inc. v. Ram Med., Inc., 892 F. Supp. 2d 957, 965 (N.D. Ill. 2012) (applying the Ervin distinction in part); see also Faeth v. Diversified Maint. Sys., Inc., 593 F. App'x 538, 539-41 (6th Cir. 2015) (discussing the application of Ervin in the alternative); see also Litterer v. United States, 545 F. Supp. 3d 625, 636-42 (N.D. Ill. 2021) (noting that "Ervin allows a non-insurer indemnitor to refuse to defend or indemnify an indemnitee when it has a 'good faith basis to assert that it will not be obligated to defend or indemnify . . . under the indemnity contract.'") (quoting Applied,102 F. Supp. 2d at 944).

Because neither party has adequately addressed Illinois law on the question of the applicable standard or presented arguments applying Illinois law to the facts before the Court in this action, the Court is of the view that this record fails to support a summary judgment determination on FastTrack's duty to defend or indemnify Aramark Sports. For this reason, the Motion will be denied, without prejudice. However, the Court will permit Aramark Sports to renew its Motion, if it so chooses, addressing the issues with citation and argument applying the relevant authority under Illinois law.

Accordingly, it is

**ORDERED**:

1.     The Clerk of the Court is **DIRECTED** to correct the caption to properly reflect Aramark Sports and Entertainment Services, LLC as the named Defendant.

2.     The Motion for Summary Judgment of Third-Party Plaintiff, Aramark Sports and Entertainment Services, LLC, Against Third-Party Defendant FastTrack Staffing, Inc. and Incorporated Memorandum of Law (Doc. 29; Motion) is **GRANTED, in part, and DENIED without prejudice, in part.**

> A.     The Motion is **GRANTED** to the extent the Court declares that Aramark Sports is a third-party beneficiary of the indemnity provision of the Service Agreement.

20

B.     To the extent Aramark Sports requests a declaration in its favor regarding FastTrack's duty to defend and indemnify Aramark Sports in the Underlying Action, the Motion is **DENIED without prejudice**.

3.     Aramark Sports shall have up to and including **August 31, 2022**, to file a renewed motion for summary judgment in which it must apply the governing law identified in the Service Agreement, that is the law of the state of Illinois.

**DONE AND ORDERED** in Jacksonville, Florida, this 25th day of July, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

lc28
Copies to:

Counsel of Record